UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MILISSA ANN SARGENT,<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>SOUTHERN CALIFORNIA EDISON 401(k) SAVINGS PLAN, et al.,<br><br>　　　　　　　　　　Defendants. | Case No. 20-cv-1296-MMA (RBB)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**<br><br>[Doc. No. 8] |

Milissa Ann Sargent ("Plaintiff") alleges three causes of action: (1) an Employee Retirement Income Security Act of 1974 ("ERISA") claim for benefits pursuant to 29 U.S.C. § 1132(a)(1)(B); (2) an ERISA breach of fiduciary duty claim pursuant to 29 U.S.C. §§ 1104, 1132(a)(3); and (3) declaratory relief.  Doc. No. 1 ("Compl.").[1] Defendants Edison 401(k) Savings Plan ("Plan"), Southern California Edison Company Benefits Committee ("Committee"), Plan Administrator of the Edison 401(k) Savings Plan ("Plan Administrator"), and Southern California Edison Company ("Company" or

---

[1] All citations to electronically filed documents refer to the pagination assigned by the CM/ECF system.

1

"SEC") (collectively, "Defendants")[2] move to dismiss all claims pursuant to Federal Rule of Civil Procedure 12(b)(6).  *See* Doc. No. 8.  Plaintiff filed an opposition to Defendants' motion, and Defendants replied.[3]  *See* Doc. Nos. 11, 12.  The Court found the matter suitable for determination on the papers and without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7.1.d.1.  *See* Doc. No. 14.  For the reasons set forth below, the Court **GRANTS IN PART and DENIES IN PART** Defendants' motion.

## I. BACKGROUND[4]

Plaintiff's action arises from "the wrongful denial of benefits due and owing to her under the Plan."  Compl. ¶ 5.

When Plaintiff and Greg Sargent's ("Mr. Sargent") marriage dissolved in 2008, they entered into a marital settlement agreement ("MSA").  *Id.* ¶ 12; *see also id.* ¶ 2.  Pursuant to the MSA, "Plaintiff was awarded and is entitled to a portion of Mr. Sargent's benefits under the Plan."  *Id.* ¶ 13.  In March 2008, Mr. Sargent provided a copy of the MSA to the Plan Administrator, who accepted the MSA as a "valid qualified domestic

---

[2] Plaintiff refers to several of these Defendant-entities using slightly different names.  *See* Compl.  In their motion to dismiss, Defendants note that several of the entities were incorrectly named.  *See* Doc. No. 8 at 2.  In her opposition to Defendants' motion, Plaintiff refers to Defendants using their preferred names.  *See* Doc. No. 11 at 6.  Accordingly, the Court adopts Defendants' entity names preferred by Defendants and subsequently used by Plaintiff.

[3] Plaintiff filed an objection to Defendants' untimely reply brief, and Defendants responded.  *See* Doc. Nos. 13, 15; *see also* CivLR 7.1.e.3.  The Court has discretion to consider an untimely brief in the interest of justice.  *See* CivLR 1.1.d; *see also City of San Diego v. Indian Harbor Ins*. Co., No. 12-cv-2604-W (WVG), 2013 WL 3873139, at *1 n.1 (S.D. Cal. July 25, 2013); *Bailey v. Hollister*, No. 07-cv-1143-JM (NLS), 2008 WL 4820992, at *1 (S.D. Cal. Nov. 3, 2008); *Aerus LLC v. ProTeam, Inc.*, No. 05-cv-1065-B (WMC), 2007 WL 2405666, at *2 (S.D. Cal. Aug. 13, 2007).  Here, Defendants' untimely reply brief has not prejudiced Plaintiff.  Accordingly, the Court **OVERRULES** Plaintiff's objection.

[4] Because this matter is before the Court on a motion to dismiss, the Court must accept as true the allegations set forth in the complaint.  *See Hosp. Bldg. Co. v. Trs. Of Rex Hosp.*, 425 U.S. 738, 740 (1976).

relations order ('QDRO')." *Id.* ¶ 14.[5]  Defendants did not notify Plaintiff that the MSA was accepted as a QDRO or that "a purported 'domestic relations order' had been submitted to them for division of Mr. Sargent's benefits under the Plan dictating that a portion thereof to be assigned to Plaintiff." *Id.* ¶ 15.  Further, Defendants did not notify Plaintiff of the Plan's "written procedures for determining the 'qualified' status of a domestic relations order" or notify Plaintiff "how she would like to elect her awarded portion of the benefits under the Plan to be paid and/or distributed to her." *Id.* ¶¶ 16, 17.

Based on the MSA, Plaintiff filed a claim for benefits under the Plan on March 20, 2019. *Id.* ¶ 19; Doc. No. 8-1 at 26 (claim request).  Committee denied Plaintiff's claim on June 17, 2019.  Compl. ¶ 20; Doc. No. 8-2 at 44–53 (claim denial).  Plaintiff subsequently appealed the Committee's denial, and Committee denied the appeal on December 3, 2019.  Compl. ¶¶ 21–22; Doc. No. 8-2 at 72–76 (appeal denial).  In issuing its denial of Plaintiff's claim and appeal, Committee asserted that "the benefits awarded

---

[5] Defendants argue that the Court may consider "the MSA, QDRO, the Plan document, and other materials cited herein in the Complaint" in ruling on the instant motion under the incorporation-by-reference doctrine despite Plaintiff not attaching them to the Complaint.  Doc. No. 8 at 4–5 n.2.  Defendants further assert that the Court may similarly consider "the claims correspondence to and from Plaintiff (and/or her then-counsel) . . . because her claims necessarily rely on them."  *Id.* at 5 n.3.  Plaintiff does not appear to object to the Court's consideration or the authenticity of these documents.

The Court finds that it may consider the documents under the incorporation-by-reference doctrine because these claim-related documents are extensively relied upon by Plaintiff in her Complaint or otherwise form the basis of her ERISA claims and she does not challenge the documents' authenticity.  *See Loomis v. Slendertone Distribution, Inc.*, 420 F. Supp. 3d 1046, 1063 (S.D. Cal. 2019) (quoting *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003)); *see also id.* (quoting *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998), *superseded by statute on other grounds as recognized in Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 681–82 (9th Cir. 2006)) ("The Ninth Circuit has noted that there is a 'policy concern underlying the rule: Preventing plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting references to documents upon which their claims are based.'"); *Parrino*, 146 F.3d at 706 ("[A] district court ruling on a motion to dismiss may consider a document the authenticity of which is not contested, and upon which the plaintiff's complaint necessarily relies."); *Koblentz v. UPS Flexible Employee Ben. Plan*, No. 12-cv-0107-LAB, 2013 WL 4525432, at *2 (S.D. Cal. Aug. 23, 2013) (considering plan provisions, correspondence with the plaintiff, and claim documents in an ERISA action where the documents were not attached to the complaint, the plaintiff relied on the documents in her complaint, and the defendant did not challenge their authenticity).

Plaintiff have already been paid and/or distributed in some manner to Plaintiff." Compl. ¶ 23. However, Plaintiff alleges that Committee failed to provide any proof that the benefits were paid or distributed to Plaintiff, and none of the benefits awarded to Plaintiff under the Plan have been paid or distributed to Plaintiff. *Id.* ¶¶ 23–34.

Plaintiff filed this action on July 10, 2020. *See generally id.* Plaintiff brings three causes of action against Defendants to receive the sought Plan benefits and equitable relief for breach of fiduciary duty pursuant to ERISA. *See id.* ¶¶ 27–56. Defendants move to dismiss each cause of action pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that Plaintiff's "claims are barred by contractual or statutory limitations periods" under ERISA. Doc. No. 8 at 2.

## II. LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, plaintiffs must also plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also* Fed. R. Civ. P. 12(b)(6). The plausibility standard demands more than a "formulaic recitation of the elements of a cause of action," or "'naked assertions' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555, 557). Instead, the complaint "must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

In reviewing a motion to dismiss under Rule 12(b)(6), courts must assume the truth of all factual allegations and must construe them in the light most favorable to the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996) (citing *Nat'l Wildlife Fed'n v. Espy*, 45 F.3d 1337, 1340 (9th Cir. 1995)). The court need not take legal conclusions as true merely because they are cast in the form of factual allegations. *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987) (quoting *W. Min.*

*Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)).  Similarly, "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).

In determining the propriety of a Rule 12(b)(6) dismissal, courts generally may not look beyond the complaint for additional facts.  *See Ritchie*, 342 F.3d at 907–08.  "A court may, however, consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *Id.*; *see also Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1125–26 (9th Cir. 2002). "However, [courts] are not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint." *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295–96 (9th Cir. 1998) (citing *In re Stac Electronics Securities Litigation*, 89 F.3d 1399, 1403 (9th Cir. 1996)).

Where dismissal is appropriate, a court should grant leave to amend unless the plaintiff could not possibly cure the defects in the pleading. *Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009) (quoting *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000)).

### III. Discussion

Plaintiff alleges three causes of action: (1) an ERISA benefits claim; (2) an ERISA breach of fiduciary duty claim; and (3) declaratory relief.  Compl. ¶¶ 27–50.  Defendants argue that Plaintiff's three claims are time-barred and, thus, request the Court to dismiss the entire action with prejudice.  *See* Doc. No. 8 at 8–9.  The Court considers each claim in turn.

**A. ERISA Claim for Benefits Pursuant to 29 U.S.C. § 1132(a)(1)(B)**

Plaintiff's first cause of action is an ERISA claim for benefits pursuant to 29 U.S.C. § 1132(a)(1)(B).  Compl. ¶¶ 27–37.  Defendants argue that Plaintiff's claim is time barred because of the Plan's contractual 180-day limitations period.  *See* Doc. No. 8

at 10–12; *see also* Doc. No. 12 at 2–5. Defendants note that the Committee denied Plaintiff's appeal on December 3, 2019 and that Plaintiff responded that she received the appeal denial letter on December 18, 2019, the very latest date when the limitations period began. *See* Doc. No. 8 at 11 (first citing Doc. No. 8-2 at 72–76 (Committee's appeal denial letter); and then citing Doc. No. 8-2 at 78 (Plaintiff's letter of receipt)). Given that Plaintiff filed her Complaint on July 10, 2020, *see* Compl., Defendants assert that the 205 days between Plaintiff receiving the appeal denial letter and Plaintiff filing suit exceeds the Plan's 180-day limitations period. *See* Doc. No. 8 at 11–12.

Plaintiff responds that Defendants' calculation of the 205 days is correct but asserts that Defendants fail to consider the COVID-19 global pandemic prevented Plaintiff from filing suit within the contractual 180-day limitations period. *See* Doc. No. 11 at 9. Plaintiff argues that the "doctrine of equitable tolling" tolled the contractual limitations period. *See id.* at 9–10. Plaintiff relies upon the March 19, 2020 California Stay-at-Home Order, which limited movement outside of one's residence and was not relaxed until May 8, 2020 "and even then most businesses were required to remain closed." *Id.* at 11; *see also* Doc. No. 11-2 at 2–3 (Executive Order N-33-20, Executive Department, State of California, March 19, 2020); 11-3 at 2–4 (Order of the State Public Health Officer, California Department of Public Health, May 7, 2020).[6] Plaintiff further points to several Orders of the Chief Judge of this district, which declared a state of judicial emergency and provided modifications to civil cases. *See* Doc. No. 11 at 12; *see also* Doc. No. 11-4 at 2–4 (Order of the Chief Judge No. 18, March 17, 2020); Doc. No. 11-5

---

[6] The Court sua sponte takes judicial notice of California's public health orders and Orders of the Chief Judge of the United States District Court for the Southern District of California that address the COVID-19 pandemic. *See* Fed. R. Evid. 201(b); *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) ("We may take judicial notice of court filings and other matters of public record."); *Cross Culture Christian Ctr. v. Newsom*, 445 F. Supp. 3d 758, 765 (E.D. Cal. 2020) (granting request of judicial notice of various court filings and government documents—including Executive Order N-33-20—addressing the COVID-19 pandemic).

at 2–3 (Order of the Chief Judge No. 18-A, March 23, 2020); Doc. No. 11-6 at 2–3 (Order of the Chief Judge No. 34, August 14, 2020).

Plaintiff asserts that she has "diligently pursued her rights." Doc. No. 11 at 13; *see also* Sargent Decl. ¶¶ 8–11, Doc. No. 11-7. After receiving the appeal denial, Plaintiff informed Committee that she would pursue legal action if it did not supply the desired documentation, and she claims that she began to investigate options to recover the benefits within the 180-day limitations period. *See* Doc. No. 11 at 13; *see also* Doc. No. 8-2 at 79; Sargent Decl. ¶ 8, Doc. No. 11-7. Despite these efforts, Plaintiff states that the COVID-19 pandemic thwarted her effort to find counsel and file her action. *See* Doc. No. 11 at 13; *see also* Sargent Decl. ¶ 10, Doc. No. 11-7. Plaintiff claims that "the courthouse doors [were] essentially closed to the public by [Order of the Chief Judge] No. 18-A" and the Stay-at-Home Orders prevented her from leaving her home. Doc. No. 11 at 13; *see also* Sargent Decl. ¶ 2, Doc. No. 11-7. She further adds that "nearly all businesses were closed, including most law firms," which made it "all but impossible" to find counsel. Doc. No. 11 at 13; *see also* Sargent Decl. ¶ 2, Doc. No. 11-7.[7] Plaintiff notes that she "attempted to go to the courthouse herself on multiple occasions in April and May 2020 in an effort to determine what the next steps in the process would be and to ultimately file her lawsuit." Doc. No. 11 at 14; *see also* Sargent Decl. ¶¶ 3, 4, 8, Doc. No. 11-7. However, despite these attempts, "the court was closed to Plaintiff, making obtaining answers to her inquiries and filing the instant action impossible." Doc. No. 11 at 14; *see also* Sargent Decl. ¶¶ 4, 8, Doc. No. 11-7. Plaintiff claims she was not able to connect with competent ERISA counsel until June 2020. *See* Doc. No. 11 at 14; *see also* Sargent Decl. ¶ 11, Doc. No. 11-7. Plaintiff argues that, despite her diligent and

---

[7] Plaintiff further notes that both she and an elderly family member, with whom Plaintiff lives, "are both at high risk of serious complications or death if they were to contract COVID-19." Doc. No. 11 at 14; *see also* Sargent Decl. ¶¶ 5, 6, Doc. No. 11-7. Plaintiff adds that she also had necessary frequent contact with a different high-risk family member. *See* Doc. No. 11 at 14; *see also* Sargent Decl. ¶ 7, Doc. No. 11-7.

reasonable efforts to pursue her rights, the circumstances surrounding the COVID-19 pandemic prevented her from filing suit and "ma[de] it impossible for her to file the instant action within the 180-day contractual limitation period described in the Plan." Doc. No. 11 at 15.

Therefore, Plaintiff requests the Court to apply equitable tolling. In doing so, Plaintiff offers a tolling period of fifty days—from March 19, 2020 through May 8, 2020. *See id.* at 15. Plaintiff argues this tolling would make her action timely filed: 155 days following the Committee's appeal denial and, thus, within the contractual 180-day limitations period. *See id.* In reply, Defendants contend that Plaintiff cannot meet the equitable tolling standard because the circumstances did not make filing her action impossible and she could have done so before the Plan deadline. *See* Doc. No. 12 at 2–5.

Section 1132(a)(1)(B) "authorizes a plan participant to bring suit 'to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.'" *Heimeshoff v. Hartford Life & Acc. Ins. Co.*, 571 U.S. 99, 108 (2013) (emphasis omitted) (quoting 29 U.S.C. § 1132(a)(1)(B)). "Time requirements in lawsuits between private litigants are customarily subject to 'equitable tolling.'" *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 95 (1990) (citing *Hallstrom v. Tillamook County*, 493 U.S. 20, 27 (1989)); *see also United States v. Kwai Fun Wong*, 575 U.S. 402, 408 (2015). Equitable tolling "may apply" where a plaintiff is diligent in seeking judicial review but is prevented from bringing a § 1132(a)(1)(B) action "by extraordinary circumstances" within the contractual period. *Heimeshoff*, 571 U.S. at 114 (citing *Irwin*, 498 U.S. at 95). Equitable tolling involves a court pausing the running of a statue of limitations "when a party 'has pursued his rights diligently but some extraordinary circumstance' prevents him from meeting a deadline." *Kwai Fun Wong*, 575 U.S. at 408 (quoting *Lozano v.*

*Montoya Alvarez*, 572 U.S. 1, 10 (2014)).[8]  "In applying equitable tolling, courts 'follow a tradition in which courts of equity have sought to "relieve hardships which, from time to time, arise from a hard and fast adherence" to more absolute legal rules, which, if strictly applied, threaten the "evils of archaic rigidity."'"  *Kwai Fun Wong*, 732 F.3d at 1052 (brackets omitted) (quoting *Holland v. Florida*, 560 U.S. 631, 650 (2010)).

"Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way."  *Credit Suisse Sec. (USA) LLC v. Simmonds*, 566 U.S. 221, 227 (2012) (emphasis omitted) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)); *see also Heimeshoff*, 571 U.S. at 114.  Regarding the first element, "[t]he standard for reasonable diligence does not require an overzealous or extreme pursuit of any and every avenue of relief.  It requires the effort that a reasonable person might be expected to deliver under his or her particular circumstances."  *Kwai Fun Wong*, 732 F.3d at 1052 (quoting *Doe v. Busby*, 661 F.3d 1001, 1015 (9th Cir. 2011)).  "Central to the analysis is whether the plaintiff was 'without any fault' in pursuing his claim."  *Id.* (quoting *Fed. Election Comm'n v. Williams*, 104 F.3d 237, 240 (9th Cir. 1996)).  Regarding the second element, "a garden variety claim of excusable neglect, such as a simple miscalculation that leads a lawyer to miss a filing deadline, does not warrant equitable tolling."  *Id.* (quoting *Holland*, 560 U.S. at 651–52).  The extraordinary circumstances must have caused the untimeliness and made it "impossible" to file a timely action.  *Ramirez v. Yates*, 571 F.3d 993, 997 (9th Cir. 2009) (first quoting *Bryant v. Arizona Atty. Gen.*, 499 F.3d 1056, 1061 (9th Cir. 2007); and then quoting *Roy v. Lampert*, 465 F.3d 964, 969 (9th Cir. 2006)).  The party seeking equitable tolling bears the burden to show that it is appropriate.  *See Gaston v. Palmer*, 417 F.3d 1030, 1034 (9th

---

[8] However, "a statute of repose is not subject to equitable tolling."  *Kwai Fun Wong v. Beebe*, 732 F.3d 1030, 1048 (9th Cir. 2013), *aff'd and remanded sub nom. United States v. Kwai Fun Wong*, 575 U.S. 402 (2015) (quoting *Albillo-De Leon v. Gonzales*, 410 F.3d 1090, 1097 n.5 (9th Cir. 2005)).

Cir. 2005), *reh'g granted, opinion modified*, 447 F.3d 1165 (9th Cir. 2006) (citing *Miranda v. Castro*, 292 F.3d 1063, 1065 (9th Cir. 2002)).

However, "[f]ederal courts have typically extended equitable relief only sparingly." *Irwin*, 498 U.S. at 96; *see also Scholar v. Pac. Bell*, 963 F.2d 264, 267 (9th Cir. 1992) ("[R]elief from strict construction of a statute of limitations is readily available in extreme cases and gives the court latitude in a case-by-case analysis."). Indeed, the Supreme Court has outlined some of the rare situations: "where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period" or "where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." *Irwin*, 498 U.S. at 96 (footnotes omitted). The Court has "generally been much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights." *Id.* (citing *Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 151 (1984)).

Here, the Court finds that the COVID-19 global pandemic and the surrounding circumstances did not sufficiently prevent Plaintiff from filing her action. Plaintiff overstates the impact the pandemic had on her failure to file a timely action.

In contrast to the characterization presented by Plaintiff, the courthouse was operational, staffed, and open to the public. The Chief Judge did issue an order declaring a judicial emergency. *See* Doc. No. 11-4 at 2–4 (Order of the Chief Judge No. 18, March 17, 2020); *see also* Order of the Chief Judge No. 17, March 13, 2020. However, the same order stated that the Court "will remain open for business," subject to limitations. Doc. No. 11-4 at 2. Except for jury trials, each district judge retained discretion to schedule civil proceedings in person or virtually. *See id.* at 3. Further, the Clerk's Office was ordered to "remain open." *Id.* at 4. In an amended Order, judges still retained discretion to schedule and hold proceedings. *See* Doc. No. 11-5 at 2 (Order of the Chief Judge No. 18-A, March 23, 2020). The Order instructed that documents not be filed in person when the documents could be "mailed or filed electronically." *Id.* For filings that could not be filed "except in person," the Order required counsel or parties to "deposit

documents to be filed in the Clerk's office's after-hours drop-off box." *Id.* Therefore, as seen by explicit language in the Orders by the Chief Judge, the courthouse was not closed to the public. The courthouse and the Clerk's Office remained operational despite some adjustments. Civil cases continued to be filed, both by parties with counsel and by parties proceeding pro se. Plaintiff could have called the Clerk's Office to ask questions and could have filed her action via mail, just as many other litigants have done throughout the pandemic. The operational changes of the courthouse did not make it impossible for Plaintiff to file her action.

Moreover, California's Stay-at-Home Order did not sufficiently make it impossible for Plaintiff to file her action. The Stay-at-Home Order did not prevent her from asking questions to the Clerk's Office over telephone or filing her action through the mail. Plaintiff's difficulty in attaining counsel is further unpersuasive because an individual party does not require an attorney to file an action. Plaintiff could have proceeded pro se. Even if the Court delved further into Plaintiff's difficulty in retaining counsel, many law firms continued to operate even if their physical offices were closed. Plaintiff did not need to physically contact an attorney; many law firms could be contacted through e-mail or other virtual means.

In sum, Plaintiff has not carried her burden to apply the rare and extreme equitable tolling relief she seeks to toll the Plan's contractual 180-day limitations period. Plaintiff had clear notice of the 180-day limitations period. *See* Doc. No. 8-2 at 72–76 (Committee's appeal denial letter); Doc. No. 8-2 at 78–79 (Plaintiff's letter of receipt). Despite the circumstances surrounding the COVID-19 pandemic, the courthouse remained open, and Plaintiff could have filed her action without physically entering the courthouse. Many other plaintiffs—both with counsel and those proceeding pro se—successfully filed actions during Plaintiff's sought tolling period. The Court finds that Plaintiff failed to demonstrate "the effort that a reasonable person might be expected to deliver" under her circumstances. *Kwai Fun Wong*, 732 F.3d at 1052 (quoting *Busby*, 661 F.3d at 1015). Additionally, the Court finds that Plaintiff fails to show how the

circumstances made it "impossible" to file a timely action. *Ramirez*, 571 F.3d at 997 (quoting *Roy v. Lampert*, 465 F.3d at 969).

Thus, the Court is left with the uncontested fact that Plaintiff filed her Complaint on July 10, 2020—205 days after she indicated receipt of Committee's appeal denial letter. *See* Compl.; Doc. No. 8 at 11–12 (providing Defendants' calculation of 205 days); Doc. No. 8-2 at 72–76 (Committee's appeal denial letter); Doc. No. 8-2 at 78–79 (Plaintiff's letter of receipt); Doc. No. 11 at 9 (providing Plaintiff's acknowledgment that the calculation of the 205 days is correct). The Supreme Court has held that courts "must give effect to the Plan's limitations provision unless we determine either [1] that the period is unreasonably short, or [2] that a 'controlling statute' prevents the limitations provision from taking effect." *Heimeshoff*, 571 U.S. at 109 (citing *Order of United Commercial Travelers of Am. v. Wolfe*, 331 U.S. 586, 608 (1947)). Plaintiff does not argue that the 180-day period is unreasonable. Even if she did, the Court finds that the 180-day contractual limitation period is reasonable. *See Koblentz*, 2013 WL 4525432, at *3 (noting that Plaintiff did not argue that a six-month contractual limitations period was unreasonable, "nor could she" given similarly upheld limitations); *see also Northlake Reg'l Med. Ctr. v. Waffle House Sys. Employee Benefit Plan*, 160 F.3d 1301, 1304 (11th Cir. 1998) (holding a 90-day contractual limitations period was reasonable and enforceable). Therefore, Plaintiff's § 1132(a)(1)(B) claim is timed-barred.

Accordingly, the Court **GRANTS** Defendants' motion and **DISMISSES** Plaintiff's § 1132(a)(1)(B) ERISA benefits claim **without leave to amend**. *See Koblentz*, 2013 WL 4525432, at *4.

**B. ERISA Breach of Fiduciary Duty Pursuant to 29 U.S.C. §§ 1104, 1132(a)(3)**

Plaintiff's second cause of action is an ERISA breach of fiduciary duty pursuant to 29 U.S.C. §§ 1104, 1132(a)(3). Compl. ¶¶ 38–48. The parties disagree on the applicable limitations provision.

**1. Whether the Contractual Limitations Period Bars Plaintiff's Breach of Fiduciary Duty Claim**

Defendants argue that Plaintiff's fiduciary claim here fails because it also is time-barred by the Plan's 180-day limitations period. *See* Doc. No. 8 at 13; *see also* Doc. No. 12 at 5. Defendants note a split of authority regarding whether a § 1132(a)(3) claim is covered by *Heimeshoff*, which approved of a contractual limitations period for a § 1132(a)(1)(B) benefits claim. *See* Doc. No. 8 at 13; *see also* Doc. No. 12 at 5–7. Despite this division in authority, Defendants contend that "the better-reasoned decisions have concluded that fiduciary breach claims are subject to a contractual limitations period." Doc. No. 8 at 13. Plaintiff responds that the Plan's contractual 180-day limitations period does not apply to her breach of fiduciary duty claim because ERISA provides an applicable statute of limitations in § 1113. *See* Doc. No. 11 at 16. Alternatively, Plaintiff argues that equitable tolling would save her claim if the Court finds the contractual limitation period applies. *See id.*

In deciding whether a contractual limitations provision is enforceable for an action to recover benefits under an ERISA plan pursuant to § 1132(a)(1)(B), the Supreme Court held that "[w]e must give effect to the Plan's limitations provision unless we determine either [1] that the period is unreasonably short, or [2] that a 'controlling statute' prevents the limitations provision from taking effect." *Heimeshoff*, 571 U.S. at 109 (quoting *Wolfe*, 331 U.S. at 608). *Heimeshoff* did not address the situation here where a plaintiff brings a breach of fiduciary duty claim pursuant to § 1132(a)(3) and whether the plan's limitations provision can supersede the limitations provision found in § 1113. Section 1113 provides the following:

> No action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earlier of--
>
> > (1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission the latest date on which the fiduciary could have cured the breach or violation, or

> (2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation;

except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.

29 U.S.C. § 1113.  The *Heimeshoff* Court did not directly rely upon or apply § 1113.  However, the Court did mention § 1113 briefly.  The Court noted the plaintiff-petitioner and the United States "contend[ed] that even if the Plan's limitations provision is reasonable, ERISA is a 'controlling statute to the contrary.'"  *Heimeshoff*, 571 U.S. at 109 (quoting *Wolfe*, 331 U.S. at 608).  Citing to § 1113 in the next sentence, the Court further noted that "[b]ut they do not contend that ERISA's statute of limitations for claims of breach of fiduciary duty controls this action to recover benefits.  See 29 U.S.C. § 1113."  *Id.*  Instead, the plaintiff in *Heimeshoff* argued that the limitations provision would "'undermine' ERISA's two-tiered remedial scheme."  *Id.*  Thus, *Heimeshoff*'s holding is not conclusive or binding on the issue before this Court.  Moreover, there is conflicting, unbinding authority on whether a plan's limitations provision can supersede § 1113's limitations provision when a plaintiff brings a § 1132(a)(3) claim.[9]  The Court

---

[9] *Compare Hewitt v. W. & S. Fin. Grp. Flexible Benefits Plan*, No. 17-5862, 2018 WL 3064564, at *2 (6th Cir. Apr. 18, 2018) (holding the plaintiff's fiduciary duty claim as time-barred after finding that a contractual provision may specify a shorter limitations period—as long as there is no "controlling statute to the contrary" and it is reasonable—and § 1113 was not a "controlling statute to the contrary" because it is merely a default rule), *and Tawater v. Health Care Serv. Corp.*, No. CV 18-47-GF-BMM, 2018 WL 6310280, at *4 (D. Mont. Dec. 3, 2018) (finding that the plaintiff's benefits and fiduciary claims were not time-barred after finding that parties can contract around any applicable statute of limitations and accrual provisions and, thus, the plan's three-year limitation period controlled over "any statutory six-year or three-year statute of limitations period" to bring a fiduciary duty ERISA claim), *with Falberg v. Goldman Sachs Grp., Inc.*, No. 19 Civ. 9910 (ER), 2020 WL 3893285, at *5–6 (S.D.N.Y. July 9, 2020) (denying the defendants' motion to dismiss where the parties disagreed whether § 1113 or the plan's limitation period controlled because the court found no controlling authority showing a contract can set a shorter period than under ERISA and, furthermore, declined to bar the plaintiff's claim on this basis), *and Zelhofer v. Metro. Life Ins. Co.*, No. 2:16-cv-00773 TLN AC, 2017 WL 1166134, at *3 (E.D. Cal. Mar. 29, 2017), *report and recommendation adopted*, 2017 WL 3282860 (E.D. Cal. Aug. 2, 2017)

finds that this question is necessarily entangled with the question of whether § 1113 is a "controlling statute" that would prevent the plan's contractual limitations period from taking effect.

As in *Heimeshoff*, this Court looks to "precedent confronting whether to enforce the terms of a contractual limitations provision." *Heimeshoff*, 571 U.S. at 106. Thus, the Court must look to the "well-established framework" for addressing the issue:

> In the absence of a controlling statute to the contrary, a provision in a contract may validly limit, between the parties, the time for bringing an action on such contract to a period less than that prescribed in the general statute of limitations, provided that the shorter period itself shall be a reasonable period.

*Id.* 106–07 (brackets omitted) (quoting *Wolfe*, 331 U.S. at 608). On the other hand, some statutes of limitation do not allow parties to contract for a shorter limitations period. *Id.* at 107 (citing *Louisiana & W.R. Co. v. Gardiner*, 273 U.S. 280, 284 (1927) (invalidating a contractual provision requiring suits for loss to be brought to "two years and one day after delivery of the property" when the Transportation Act stated that "it shall be unlawful" to contract for a "any limitation shorter than two years from the time notice is given of the disallowance of the claim")). However, "[t]he rule set forth in *Wolfe* recognizes . . . that other statutes of limitations provide only a default rule that permits parties to choose a shorter limitations period." *Id.*

Here, the Court finds that § 1113 is a controlling statute that supersedes the Plan's limitations period. Although *Heimeshoff* did not explicitly address § 1113 or an ERISA claim for breach of a fiduciary duty, its brief citation to § 1113 at minimum suggests

---

(finding the plaintiff's fiduciary duty claim time barred under § 1113 where the parties assumed the claim arose under ERISA and thus was governed under § 1113), *and Winburn v. Progress Energy Carolinas, Inc.*, No. 4:11-cv-03527-RBH, 2015 WL 505551, at *11, *12 (D.S.C. Feb. 6, 2015) (granting summary judgment on a fiduciary duty claim because the action was not timely filed under § 1113 after interpreting that *Heimeshoff* distinguished § 1113 from its holding).

dicta that the Court is inclined to see § 1113 as a controlling statute. *See Heimeshoff*, 571 U.S. at 110; *Winburn*, 2015 WL 505551, at *11. The Court finds further persuasive authority in the Supreme Court's recent § 1132(a)(2) fiduciary duty ERISA case addressing "whether a plaintiff necessarily has 'actual knowledge' of the information contained in disclosures that he receives but does not read or cannot recall reading." *Intel Corp. Inv. Policy Comm. v. Sulyma*, 140 S. Ct. 768, 773 (2020). The Supreme Court did not address the connection between a breach of fiduciary duty and a contractual limitations period. Nevertheless, the Court finds persuasive value in the Supreme Court's description and framing of § 1113's operation. For example, the Supreme Court noted that suits alleging breach of a fiduciary duty "must be filed within one of three time periods, each with different triggering events." *Id.* at 774. The Supreme Court's language in interpreting the statute of limitations appears to foreclose limitations periods outside of the statute. Examining *Heimeshoff* and *Intel Corp.* together reveals the Supreme Court's inclination to view § 1113 as the controlling limitations period for fiduciary duty claims. Additionally, the Court also finds the Plan's limitations provision could potentially disrupt the congressional intent behind including three distinct time periods with distinct triggering events in § 1113. The comprehensive statute of limitations suggests that § 1113 was designed to be controlling and not merely a default rule. Accordingly, the Court finds that § 1113 controls Plaintiff's fiduciary claim, and the Plan's 180-day limitations period does not bar Plaintiff's claim. *See Falberg*, 2020 WL 3893285, at *6.

### 2. Whether § 1113 Bars Plaintiff's Breach of Fiduciary Duty Claim

In the alternative—in the event the contractual limitations period is inapplicable to the fiduciary claim—Defendants argue that the claim is still time barred under 29 U.S.C. § 1113. *See* Doc. No. 8 at 16. Defendants assert that Plaintiff's claim fails under both subsections of § 1113(1) because the last action of the breach under § 1113(1)(A) and the last opportunity to cure the breach under § 1113(1)(B) were both in 2008. *See* Doc. No. 8 at 17–22; *see also* Doc. No. 12 at 7–10. Plaintiff responds that her claim fiduciary duty

claim is timely under § 1113. *See* Doc No. 11 at 18–29. Plaintiff asserts that her claim is timely under any ERISA limitations period because her "breach of fiduciary duty claim arises out of the arbitrary and capricious denial of Plaintiff's claim for benefits and the subsequent arbitrary and capricious denial of Plaintiff's appeal of that decision *in 2019*." *Id.* at 19. Accordingly, Plaintiff argues her claim is timely under both § 1113(2) and § 1113(1)(A) but contends that § 1113(1)(B) does not apply. *See* Doc. No. 20–30.

As noted above, actions for breach of a fiduciary duty under ERISA "must be filed within one of three time periods, each with different triggering events." *Intel Corp. Inv. Policy Comm.*, 140 S. Ct. at 774. "The first begins when the breach occurs." *Id.*; *see* 29 U.S.C. § 1113(1). The plaintiff must file the action "within six years of 'the date of the last action which constituted a part of the breach or violation' or, in cases of breach by omission, 'the latest date on which the fiduciary could have cured the breach or violation.'" *Intel Corp. Inv. Policy Comm.*, 140 S. Ct. at 774 (quoting 29 U.S.C. § 1113(1)). Section § 1113(1) is a statute of repose, which "effects a legislative judgment that a defendant should be free from liability after the legislatively determined period of time." *Id.* (brackets omitted) (quoting *California Pub. Employees' Ret. Sys. v. ANZ Sec., Inc.*, 137 S. Ct. 2042, 2049 (2017)). "The second period, which accelerates the filing deadline, begins when the plaintiff gains 'actual knowledge' of the breach." *Id.*; *see* 29 U.S.C. § 1113(2). The plaintiff must file the action "within three years of 'the earliest date on which the plaintiff had actual knowledge of the breach or violation.'" *Intel Corp. Inv. Policy Comm.*, 140 S. Ct. at 774 (quoting 29 U.S.C. § 1113(2)). Section § 1113(2) is a statute of limitations, which "encourage[s] plaintiffs to pursue diligent prosecution of known claims." *Id.* (quoting *California Pub. Employees' Ret. Sys.*, 137 S. Ct. at 2049). The third period "applies 'in the case of fraud or concealment.'" *Id.* (quoting 29 U.S.C. § 1113). The period "begins when the plaintiff discovers the alleged breach," and Plaintiff must file the action within six years of "the date of discovery." *Id.* (quoting 29 U.S.C. § 1113).

"[T]o apply the limitations period, we must first isolate and define the underlying violation upon which . . . [plaintiff's] claim is founded." *Ziegler v. Connecticut Gen. Life Ins. Co.*, 916 F.2d 548, 550–51 (9th Cir. 1990) (quoting *Meagher v. Int'l Ass'n of Machinists & Aerospace Workers Pension Plan*, 856 F.2d 1418, 1422 (9th Cir. 1988)). Here, Plaintiff alleges several actions that breached Defendants' fiduciary duties, some of which appear to involve breaches occurring in or around 2008. *See* Compl. ¶¶ 42–45. However, in her opposition brief, Plaintiff clarifies and emphasizes that the alleged breach "arises out of the arbitrary and capricious denial of Plaintiff's claim for benefits and . . . denial of Plaintiff's appeal of that decision *in 2019*." Doc. No. 11 at 19. Thus, the Court narrows its analysis to the allegations surrounding Plaintiff's claim and appeal denial.[10]

Plaintiff claims that Committee failed to act in her interest "for the exclusive purpose of providing her Plan benefits," "to discharge its duties with the care, skill, prudence, and diligence required of it under the circumstances," and "to act in accordance with documents and instruments governing the Plan." Compl. ¶ 47; *see also* 29 U.S.C. §

---

[10] Even if the Court were to examine Plaintiff's allegations pertaining to the events in 2008, these claims appear to be time-barred even under § 1113(1)(A)'s 6-year statute of repose. The events surrounding 2008 involve Defendants' failure to "notify Plaintiff that the MSA had been accepted as a valid QDRO under applicable laws, or that the QDRO . . . had been submitted to them for division of Mr. Sargent's benefits under the Plan with a portion thereof to be assigned to Plaintiff"; "send Plaintiff a copy, or otherwise notify Plaintiff, of the Plan's written procedures for determining the 'qualified' status of a domestic relations order as required by law"; "send Plaintiff any sort of request or notification concerning how she would like to elect her awarded portion of the benefits under the Plan to be paid and/or distributed to her"; or, otherwise before 2019, provide Plaintiff with information "concerning the division of Mr. Sargent's benefits under the Plan and Plaintiff's award to a portion of such benefits, and the alleged assignment and payment and/or distribution of such awarded portion of the benefits thereunder . . . or that such awarded portion of such benefits had been paid and/or distributed to her." Compl. ¶¶ 42, 43, 44, 45. Based on Plaintiff's allegations, the last actions appear to have occurred around 2008 and are, thus, time-barred by § 1113(1)(A).

Additionally, § 1113(1)(B)'s last opportunity to cure an omission does not save these claims. *See Moyle v. Liberty Mut. Ret. Benefit Plan*, 263 F. Supp. 3d 999, 1021 (S.D. Cal. 2017) (citing *Olivo v. Elky*, 646 F. Supp. 2d 95, 102 (D.D.C. 2009)) ("Defining 'cure' in the sense 'to find a remedy' would extend a fiduciary's liability indefinitely as it is always possible to remedy a breach."). Plaintiff argues that § 1113(1)(B) "does not apply" to her claim. Doc. No. 11 at 29.

1104(a)(1).  Because Plaintiff's allegations center on the fiduciaries' breaches surrounding the 2019 claim and appeal denials, Plaintiff's fiduciary breach claim is not time-barred under § 1113's six-year or three-year limitations periods.  *Cf. Wit v. United Behavioral Health*, No. 14-cv-02346-JCS, 2017 WL 3478775, at *13 (N.D. Cal. Aug. 14, 2017) (discussing whether the plaintiffs can establish causation of her § 1132(a)(3) claims in a motion for summary judgment and finding that the plaintiffs can seek to secure the fiduciary obligations owed to them and that such a claim is a separate "primary harm" than denied benefits).  Despite Plaintiff being time-barred from bringing her § 1132(a)(1)(b) claim to recoup her alleged owed benefits to be made whole, she is not time-barred from bringing her § 1132(a)(3) fiduciary claim to secure the fiduciary rights owed to her.

However, the parties have not argued whether Plaintiff has pleaded sufficient facts to sustain a plausible claim under § 1132(a)(3) that would show more than a mere failure to provide benefits, so the Court refrains from such analysis.  *See United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020) (quoting *Greenlaw v. United States*, 554 U.S. 237, 243 (2008)) ("[I]n both civil and criminal cases, in the first instance and on appeal . . . , we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present.").  The Court merely finds that Plaintiff has shown her § 1132(a)(3) claim is not time-barred and may possibly be pleaded.  Moreover, and if Plaintiff does allege sufficient facts, whether Plaintiff can prove her fiduciary claim is not an issue appropriate for a Rule 12(b)(6) motion.

Accordingly, the Court **DENIES** Defendants' motion to dismiss Plaintiff's § 1132(a)(3) ERISA breach of fiduciary duty claim.

**C. Declaratory Relief**

Plaintiff's third cause of action is declaratory relief.  Compl. ¶¶ 49–50.  Defendants argue that Plaintiff's claim fails because it is derivative of her two failed ERISA claims.  *See* Doc. No. 8 at 22.  Plaintiff responds that the claim survives because of her timely ERISA claims.  *See* Doc. No. 11 at 30.

Plaintiff's declaratory relief claim is premised on her ERISA claims. *See* Compl. ¶ 50. Because Plaintiff's § 1132(a)(3) claim is not time-barred, her declaratory relief claim is not time-barred. Accordingly, the Court **DENIES** Defendants' motion to dismiss Plaintiff's declaratory relief claim.

## IV. C̲onclusion̲

For the foregoing reasons, the Court **GRANTS IN PART and DENIES IN PART** Defendants' motion to dismiss. The Court **GRANTS** Defendants' motion and **DISMISSES** Plaintiff's § 1132(a)(1)(B) benefits claim **without leave to amend**. The Court **DENIES** Defendants' motion to dismiss Plaintiff's § 1132(a)(3) breach of fiduciary duty and declaratory relief claims.

**IT IS SO ORDERED**.

Dated: October 14, 2020

_____
HON. MICHAEL M. ANELLO
United States District Judge